# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHRISTINE KING, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | Case No. 21-cv-367-JFH-GLJ |
| | ) | |
| OKMULGEE COUNTY JAIL | ) | |
| TRUST AUTHORITY, | ) | |
| OKMULGEE COUNTY BOARD | ) | |
| OF COMMISSIONERS, and | ) | |
| OKMULGEE COUNTY CRIMINAL | ) | |
| JUSTICE AUTHORITY, | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

The Plaintiff filed this action on September 13, 2021, in Okmulgee County District Court of Oklahoma, alleging the Okmulgee County Board of Commissioners ("Board"), Okmulgee County Criminal Justice Authority ("OCCJA") and the Okmulgee County Jail Trust Authority discriminated against her with respect to certain sick leave and paid leave rights. The Board and the OCCJA (collectively, the "Defendants") subsequently removed the action to this Court [Dkt. 1]. On February 13, 2023, the Court referred this case to the undersigned Magistrate Judge for all further proceedings in accordance with jurisdiction pursuant to 28 U.S.C. § 636 [Dkt. 34]. This matter is now before the Court on the Defendants' Motion for Summary Judgment [Dkt. 21]. The Defendants seek judgment on all of Plaintiff's claims. For the reasons set forth below, the undersigned Magistrate Judge

1

finds that the Defendants' Motion for Summary Judgement and Brief in Support ("Motion") [Dkt. 21] should be GRANTED.

## PROCEDURAL HISTORY

On September 13, 2021, Plaintiff filed the present case alleging violations of unspecified provisions of the Families First Coronavirus Response Act ("FFCRA"), Pub. L. No. 116-127, 137 Stat. 178 (2020), and the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2612, *et seq*. Plaintiff alleges she was discriminated against because the Defendants did not accommodate her expanded sick leave under the FFCRA and the FMLA and was unlawfully retaliated against or otherwise discriminated against because of conduct protected by the FFCRA. *See* Docket No. 2-2. The Defendants filed the Motion on September 22, 2022, alleging that the OCCJA was Plaintiff's employer, not the Board, and that Plaintiff was not entitled to and did not request any leave under the FFCRA or FMLA. *See* Docket No. 21. Plaintiff responded on October 12, 2022, well past the required response time-period, alleging that both the Board and the OCCJA were her employer for liability purposes and that she was terminated before she could file a FMLA claim and was not granted leave as required under the FFCRA. *See* Docket No. 24.

## FACTUAL BACKGROUND

The Defendant's statement of undisputed facts reflects that Plaintiff began working at the Moore Detention Center in Okmulgee, Oklahoma in August 2017. Docket No. 21 at p. 2, ¶ 1. While at the Moore Center, Plaintiff served in several capacities, including initially as an RN and ultimately as the Heath Services Administrator and Responsible Health Authority. *Id*. at pp. 2-3, ¶¶ 1, 3-4. Plaintiff's role as the Health Services

Administrator involved more administrative tasks, but she continued to perform physical assessments of inmates until she began working from home in May 2020. *Id*. at p. 3, ¶ 4. Plaintiff had undergone treatment for breast cancer before she began working at the Moore Center and believed she had incurred some damage to her lungs from her previous cancer treatment that resulted in her being immunocompromised. *Id*. at p. 3, ¶ 8. In May 2020, Plaintiff began working from home due to her concern regarding contracting COVID-19. *Id*. at p. 3, ¶ 5. At the time Plaintiff began working from home, Plaintiff and her direct supervisor, Shimika Goudeau, discussed Plaintiff working from home. *Id*. at p. 4 ¶ 10. Although Ms. Goudeau was aware Plaintiff had previously been treated for cancer, she never discussed the matter directly with Plaintiff and Plaintiff did not request any time off to undergo any cancer treatments. *Id*. at p. 4, ¶¶ 10-11. While working from home, Plaintiff maintained a full-time schedule and she never returned to work in person at the Moore Center. *Id*. at p. 4, ¶¶ 12-13. In June or July of 2020, Plaintiff's new supervisor, Leighton McComas, asked Plaintiff for a doctor's note regarding her working from home and on July 14, 2020, Plaintiff provided a letter from Keri Enus, APRN-CNP, stating that "[d]ue to her age and medical history and current conditions, [Plaintiff] is considered to be high risk for complications if she contracts COVID-19. I recommend that she work from home indefinitely." *Id*. at p. 4, ¶¶ 15-16. All nursing and medical department positions at the Moore Center are hands-on and Plaintiff's job required that she perform her job duties on site as it was not a remote position that could be successfully and thoroughly done remotely. *Id*. at p. 5, ¶ 19. No other employees in the medical department or any other department of the Moore Center worked from home. *Id*. at p. 4, ¶ 14.

3

On July 23, 2020, Shannon Clark became the new jail administrator of the Moore Center, a position previously held by Plaintiff's ex-husband and her then roommate. *Id*. at pp. 4-5, ¶ 17. After noticing Plaintiff's office was always empty, Mr. Clark inquired and learned that Plaintiff was working from home. *Id*. at p. 5, ¶ 18. After reviewing the July 14, 2020 letter from Ms. Enus, Mr. Clark, who had ultimate authority to hire and fire Moore Center employees, instructed his assistant to tell Plaintiff that she needed to return to work in person at the Moore Center or complete the required paperwork to take FMLA leave. *Id*. at p. 5, ¶¶ 20, 22-23. On July 28, 2020, Mr. McComas left Plaintiff a voicemail informing her that she could n2o longer work for the OCCJA because there were no light duty positions available. *Id*. at p. 6, ¶ 24. After a follow-up call with Mr. McComas in which he told her to call human resources to complete FMLA leave paperwork, Plaintiff spoke to Amber Pryor, in H.R. at OCCJA, and informed Ms. Pryor that: she was not sick; she was working full-time at home; she was not undergoing any chemotherapy or other treatment; she would not complete any FMLA paperwork; she would resign before filling out any FMLA leave paperwork; and she asked Ms. Pryor where to send a resignation email. *Id*. at p. 6, ¶¶ 26-28. Ms. Pryor provided her email address to Plaintiff, but Plaintiff never sent her anything. *Id*. at p.6, ¶ 29. Shortly thereafter, Mr. McComas texted Plaintiff asking her if she had resigned and informing her that her resignation had been accepted. *Id*. at p.6, ¶ 30. Plaintiff subsequently applied for unemployment benefits, but the Oklahoma Employment Security Commission ultimately determined that she was not entitled to such benefits because she refused FMLA leave and quit her job at the Moore Center. *Id*. at p. 7, ¶¶ 32-33.

4

Although Plaintiff's untimely response fails to comply with Fed. R. Civ. P. 56(c)(1) and LCvR. 56.1(c), in the body of the response Plaintiff purports to controvert or offer material facts on the issues of whether she was fired or resigned and that Ms. Goudeau gave her permission to work from home.  *See* Docket No. 24 at pp. 3-4.

## ANALYSIS

### I.    Summary Judgement Standard

Summary judgment should be granted if the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The moving party has the burden of showing the absence of a genuine issue of material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), and the evidence is to be taken in the light most favorable to the non-moving party, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). A party "asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute[.]"  Fed. R. Civ. P. 56(c).  Indeed, "[i]f the movant carries this initial burden, the non-movant may not rest upon its pleadings, but must set forth specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  *Kaul v. Stephen*, 83 F.3d 1208, 1212 (10th Cir. 1996) (*quoting Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995)).  The Supreme Court has stated that the "plain language of Rule

56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## II.    Plaintiff's Failure to Timely and Properly Respond

The Defendants filed their Motion on September 12, 2022 [Dkt 21] and, pursuant to LCvR 7.1(d), Plaintiff's response was due not more than 14 days later, or by September 26, 2022. Plaintiff filed her response October 12, 2022, or sixteen days after the deadline [Dkt 24]. Moreover, Plaintiff did not seek leave to extend the time to file her response or subsequently provide a basis for finding any excusable neglect for the late filing. *See*, *e.g.*, Fed.R.Civ.P. 6(b)(1). Indeed, despite the Defendants raising the late filing issue in their October 26, 2022 reply brief [Dkt. 26], Plaintiff did not subsequently attempt to belatedly seek leave or offer a justification for her late filing.

Plaintiff's response also fails to comply with Fed. R. Civ. P. 56(c)(1) and LCvR 56.1(c). Plaintiff's response does not have "a section responding, *by correspondingly numbered paragraph*, to the facts that the movant contends are not in dispute and shall state any fact that is disputed," LCvR 56.1(c) (italics original), or cite to particular parts of the record to dispute the statement of undisputed facts set forth by the Defendants. Fed. R. Civ. P. 56(c)(1)(A). At most, Plaintiff scatters a few references to some facts purportedly disputing a few of the Defendants' undisputed facts and attaches the entire deposition transcript of Ms. Goudeau and the note from Ms. Enus. *See* Docket No. 24.

As a general matter:

6

> a party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party. The district court must make the additional determination that judgment for the moving party is "appropriate" under Rule 56. Summary judgment is appropriate only if the moving party demonstrates that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. By failing to file a response within the time specified by the local rule, the nonmoving party **waives the right to respond or to controvert the facts asserted** in the summary judgment motion. The court should accept as true all material facts asserted and properly supported in the summary judgment motion. But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment.

*Reed v. Bennett*, 312 F.3d 1190, 1195, (10th Cir. 2002) (emphasis added). Moreover, Plaintiff's submission of parts of the record without specifically identifying how they might controvert some fact is insufficient. On summary judgment, the court has no duty to search the record for a litigant to find evidence supporting that litigant's summary judgment interests. *See Cross v. The Home Depot*, 390 F.3d 1283, 1290 (10th Cir. 2004) (on a motion for summary judgment, "'it is the responding party's burden to ensure that the factual dispute is portrayed with particularity, without . . . depending on the trial court to conduct its own search of the record,'" and the court has no obligation "'to comb the record in order to make [plaintiff's] arguments for [her]'") (first quoting *Downes v. Beach*, 587 F.2d 469, 472 (10th Cir. 1987) then quoting *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000)).

Plaintiff did not file her response timely or properly set out particular facts in the record to controvert any of the statements of undisputed facts in the Motion. As such, the undersigned Magistrate Judge finds that Plaintiff waived her right to respond to the Motion and accepts all material facts asserted in the Motion as true. Nonetheless, even if Plaintiff's

response is considered, Plaintiff fails to offer any facts controverting any material fact and Defendants are entitled to judgment as a matter of law.

## III.    The Families First Coronavirus Response Act

Plaintiff alleges the Defendants violated the FFCRA because she was eligible for paid leave under the FFCRA, she requested an accommodation in line with her expanded sick leave and she was unlawfully retaliated and otherwise discriminated against because of conduct protected by the FFCRA. *See* Dkt. 2-2 at ¶¶ 15-17. The FFCRA was signed into law on March 18, 2020, with an effective date of April 2, 2020, to deal with certain results of the response to COVID-19. Although Plaintiff does not identify any particular provision of this legislative act she believes the Defendants violated, the Defendants identify two portions of the FFCRA that are potentially relevant to Plaintiff. Those two sections created two separate acts: the Emergency Family and Medical Leave Expansion Act ("EFMLEA") and the Emergency Paid Sick Leave Act ("EPSLA").

### A.    The Emergency Family and Medical Leave Expansion Act.

The EFMLEA temporarily amends the Family Medical Leave Act ("FMLA") to entitle certain employees to twelve weeks of leave per year "because of a qualifying need related to a public health emergency." 29 U.S.C. § 2612(a)(1)(F). A qualifying need includes if "the employee is unable to work (or telework) due to a need for leave to care for the son or daughter under the age of 18 years of age of such employee if the school or place of care has been closed, or the child care provider of such son or daughter is unavailable, due to the public health emergency." *Id*. at § 2612(a)(2)(A).

8

No evidence is presented that Plaintiff had a qualifying need under the EFMLEA because there is no evidence that Plaintiff was unable to work or telework because of the need to care for an under 18-year-old child. Indeed, Plaintiff's response does not even address the Defendants' argument that the EFMLEA does not apply to her. Generally, a party "waive[s] [an] issue by failing to make any argument or cite any authority to support his assertion." *Cowden v. Board of Governors of Colorado State University System by and through Colorado State University-Pueblo*, __ F.Supp.3d __, 2022 WL 4349620, *7 (D. Colo., August 23, 2022) (quoting *United States v. Hardwell*, 80 F.3d 1471, 1492 (10th Cir. 1996)). Therefore, because the facts are undisputed and Plaintiff fails to offer any argument on the applicability of any claim under the EFMLEA, the undersigned Magistrate Judge finds that are no facts to support a claim under the EFMLEA against the Defendants.

**B.     The Emergency Paid Sick Leave Act.**

The EPSLA is a separate section of the FFCRA that temporarily provided for two weeks of paid sick leave if an employee was unable to work or telework because of COVID-19. Pub. L. No. 116-127 at § 5102(a). Under the EPSLA "[i]t shall be unlawful for any employer to discharge, discipline, or in any other manner discriminate against any employee who— (1) takes leave in accordance with this Act." Pub. L. No. 116-127 at § 5104. The EPSLA specifically requires that:

> [a]n employer shall provide to each employee employed by the employer paid sick time to the extent that the employee is unable to work (or telework) due to a need for leave because:
>
> . . . ;

(ii)    The Employee has been advised by a health care provider to self-
         quarantine due to concerns related to COVID-19. . . .

Pub. L. No. 116-127 at § 5102(a); 29 C.F.R. § 826.20(a)(1).  The enforcement provisions

for failure to provide paid sick leave under the EPSLA are tied to the Fair Labor Standards

Act ("FLSA").  Pub. L. No. 116-127 at § 5105; 29 C.F.R. § 826.150.

Plaintiff alleges only that she was eligible for unspecified sick leave and paid leave

under the FFCRA, she requested an accommodation in line with her expanded sick leave

under the FFCRA, and the Defendants unlawfully retaliated and otherwise discriminated

against her because of protected FFCRA conduct.  *See* Dkt. 2-2 at ¶¶ 15-17.  Because

Plaintiff's allegations are so vague and do not identify any specific provision of the FFCRA

under which she is asserting a claim, it is unclear if she is asserting both interference and

retaliation claims under the EPSLA.

To the extent Plaintiff is attempting to assert an EPSLA interference claim, it fails.

It is widely held that the EPSLA does not provide for an interference claim as it neither

prohibits interference nor adopts or amends the FMLA.  *See e.g.*, *Tran v. Acme Machell

Co., Inc.*, 2022 WL 3369626, *5 (E.D. Wis. August 16, 2022); *see also Gomes v. Steere

House*, 504 F.Supp.3d 15, 18 (D. R.I. 2020) ("the EPSLA has no connection to the

FMLA"); *Alvarado v. ValCap Grp.*, 2022 WL 19686, *3 (N.D. Tex. Jan 3, 2022)

(dismissed the "EPSLA claim to the extent it is based on the allegation that [the defendant]

interfered with the [plaintiff's] rights under the EPSLA"); *Kovacevic v. Am. Int'l Foods

Inc.*, 2021 WL 3629756 , *3 (W.D. Mich. Aug. 17, 2021) ("[n]or is there a provision in the

EPSLA that specifically prohibited an employer from 'interfering' with an employee's

rights under the statute"). The undersigned Magistrate Judge agrees with these cases and concludes that the EPSLA does not provide for an interference claim and, therefore, Plaintiff cannot assert such a claim.

Although not specifically addressed within the Tenth Circuit, other courts considering the matter have used the elements of an FLSA retaliation claim to analyze a EPSLA retaliation claim under the burden-shifting framework provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Wilson v. Marshall Shredding LLC*, __ F.Supp.3d __, 2022 WL 2873463, *5-6 (W.D. Tex. July 21, 2022); *Atwood v. JCF Residences Mgt. Co.*, 2022 WL 185187, *8 (M.D. Tenn. January 19, 2022); *Colombe v. SGN, Inc.* 2021 WL 1198304, *3 (E.D. Ky. March  29, 2021).  Under this approach, a plaintiff's establishment of a prima facie case creates a presumption of retaliation. *Metzler v. Federal Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006).  The burden then shifts to the defendant to produce evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason.  *Id*.  If the defendant meets this burden, the burden shifts back to the plaintiff to present evidence that the proffered reason was not the true reason for the employment decision.  *Id*.

Thus, under the *McDonnell Douglas* burden-shifting framework, the Plaintiff must first establish a prima facie case of EPSLA retaliation by demonstrating: (1) she engaged in protected activity under the EPSLA; (2) she suffered an adverse employment action contemporaneous with or subsequent to the protected activity; and (3) a causal connection between the protected activity and the adverse employment action. *Pacheco v. Whiting Farms, Inc.*, 365 F.3d 1199, 1206 (10th Cir. 2004) (citing *Conner v. Schnuck Markets, Inc.*,

121 F.3d 1390, 1394 (10th Cir. 1997)).  Based on the undisputed facts, Plaintiff cannot establish a prima facia case of EPSLA retaliation.

To satisfy the first element, Plaintiff must set forth facts demonstrating that she actually took paid sick leave under the EPSLA.  *Wilson v. Marshall Shredding*, __ F.Supp.3d __, 2022 WL 2873463 at *6 ("taking paid sick leave under the EPSLA is the protected activity").  It is undisputed that Plaintiff began working from home in May 2020 out of fear of catching COVID-19, she had previously undergone treatment for cancer and she believed she was immunocompromised as a result of such treatment, and she discussed working from home with her supervisor.  *See* Docket 21 at pp. 3-4, ¶¶ 5, 8, 10.  It is further undisputed that from May 2020 until July 28, 2020, Plaintiff was working full-time, she was not sick and she did not want to request any sick leave.  Plaintiff testified that on July 28, 2020, she was not sick and was able to work from home.  *See* Docket No. 21-1 at p. 58, line 17- p. 59, line 1.  This was also confirmed by Ms. Goudeau, who testified that Plaintiff was working from home and was not out sick when she was working from home.  *See* Docket No. 24-1 at p.27, lines 20-24.  Thus, it is undisputed that during the relevant time-period Plaintiff was working full-time, was not sick and did not take any leave.

While Plaintiff wanted to work from home due to concerns over contracting COVID-19, her desire to work from home is not the same thing as requesting leave.  In the context of the COVID-19 Pandemic, several courts have concluded that an employee's request to work from home does not count as a request for leave, because working remotely and taking protected time off are substantially different requests.  *See Figueroa Collazo v. Ferrovial Construcción PR, LLC*, 2021 WL 4482268, *8 (D.P.R. Sept. 30, 2021) ("[e]ven

if the EFMLEA and EPSLA are to be construed liberally, in reality, Plaintiff merely requested a hybrid work accommodation, not paid leave pursuant to the federal legislation. Therefore, requesting telework cannot be considered a protected conduct as suggested by Plaintiff."); *see also Jarry v. ECC Corp.*, 581 F.Supp.3d 376, 381 (D. R.I. 2022) (agreed with and quoting *Figueroa Collazo*). Thus, Plaintiff's past approval to work from home and any request to continue working from home cannot constitute actually taking paid sick leave under the EPSLA.

It is also undisputed that Plaintiff was ineligible for paid sick leave under the EPSLA even had she requested it. To be eligible, Plaintiff had to be <u>unable</u> to work or telework due to a need for leave because she had "been advised by a health care provider to self-quarantine due to concerns related to COVID-19." Pub. L. No. 116-127 at § 5102(a); 29 C.F.R. § 826.20(a)(1). Plaintiff argues that the July 14, 2022 letter from Ms. Enus constitutes advising her to "self-quarantine." Plaintiff does not, however, offer any factual or legal support for this conclusory assertion. Moreover, as noted above, it is undisputed that Plaintiff was able to work or telework and was working from home, so she cannot satisfy the threshold element of EPSLA eligibility. Second, Plaintiff fails to put forward any facts or authority indicating that the July 14, 2022 letter recommending that she work from home due to the risk of complications should she contract COVID-19 constitutes advising her to "self-quarantine." Although neither the FFCRA nor the EPSLA define "self-quarantine," the common meaning of "quarantine" indicates it means something more than simply working from home. The American Heritage Dictionary defines the noun "quarantine" as "[a] condition, period of time, or place in which a person, animal,

13

plant, vehicle, or amount of material suspected of carrying an infectious agent is kept in confinement or isolated in an effort to prevent disease from spreading"; "[a]n action resulting in such a condition: the government's quarantine of the animals"; "[a]n action to isolate another nation, such as a blockade of its ports or a severance of diplomatic or trade relations"; and "[t]he condition of being isolated by such an action."  American Heritage Dictionary                                     Entry:                                     quarantine, *https://www.ahdictionary.com/word/search.html?q=quarantine* (last visited March 14, 2023).  The Defendants also note that a Centers for Disease Control ("CDC") publication describes a quarantine as something that "separates and restricts the movement of people who were exposed to a contagious disease to see if they become sick."  Docket No. 21-6 at p.1.  The undisputed facts, as deemed admitted, provide that Plaintiff began working from home in May 2020 out of fear of catching COVID-19 and that she was immunocompromised.  Docket No. 21 at p. 3, ¶¶ 5 & 8.  Plaintiff offers no facts supporting that she was quarantined from May to July 28, 2020, such that she actually had or had been exposed to COVID-19, was confined to her home, isolated herself from others, did not allow anyone to visit her home, or restricted her non-work movements.  Thus, the undersigned Magistrate Judge concludes it is undisputed that Plaintiff was not advised to self-quarantine as required by the EPSLA.

Lastly, the Defendants argue that even if Plaintiff met the eligibility requirements to take EPSLA paid sick leave, Plaintiff was excluded from such leave because she was a health care provider.  The FFCRA provides that paid sick leave benefits must be provided "[e]xcept that an employer of an employee who is a health care provider or an emergency

responder may elect to exclude such employee from the application of this subsection." Pub. L. No. 116-127 at § 5102(a). Although the Defendants do not point to any definition of "health care provider" for purposes of the EPSLA, the Department of Labor defines the term very expansively in a way that likely includes Plaintiff's position at the Moore Center. *See* 29 C.F.R. § 826.40(c)[1]; *see also Thornberry v. Powell County Detention Center*, 2020 WL 5647483, *3 (E.D. Ky. September 9, 2022) (finding that the exclusion applies to "correctional institution personnel" as well as individuals who work for such facilities). Here, however, the Defendants do not set forth any facts indicating that they made any election to exclude Plaintiff or any Moore Center employee from coverage of the EPSLA under the health care provider exclusion. *See e.g.*, *Clement v. Surgical Clinic,* PLLC, __ F.Supp.3d __, 2022 WL 3691632, *12 (M.D. Tenn. August 25, 2022) (concluding that although it was undisputed plaintiff was employed as a health care provider employee, the defendant did not provide any evidence that it ever elected the health care provider exception). Therefore, it is disputed as to whether the health care employee exclusion of section 5102(a) of the FFRCA applies to Plaintiff and the Defendants are not entitled to judgement as a matter of law based on the health care provider exclusion.

Notwithstanding the inapplicability of the health care provider exclusion, because Plaintiff cannot set forth any facts supporting that she took any EPSLA paid sick leave and was thereby engaged in a protected activity, she cannot state a prima facia case for EPSLA

---

[1] In *New York v. United States Department of Labor*, 477 F.Supp.3d 1, 14-15 (S.D. N.Y. 2020), the court struck down the regulatory definition of "health care provider" as "vastly overbroad".

retaliation.  As a result, Plaintiff's EPSLA retaliation claim must fail and the court need not address the remaining two factors or the burden-shifting framework provided in *McDonnell Douglas*.  Thus, for example, it is immaterial whether Plaintiff resigned or was terminated from the Moore Center.

Based on the above, the undersigned Magistrate Judge concludes that the Defendants have met their burden and the undisputed facts establish that they are entitled to judgment as a matter of law on Plaintiff's EPSLA claim.

### IV.    The Family Medical Leave Act

Plaintiff alleges that her absence from work was due to her need for treatment of a qualified health condition protected by 29 U.S.C. § 2612 and her supervisor knew she was receiving medical treatment as a result of her qualified health condition.  *See* Docket 2-2 at ¶¶ 22-23.  Under the FMLA, an eligible employee is entitled to a total of 12 weeks of leave during any 12–month period "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee."  29 U.S.C. § 2612(b)(1).  Plaintiff's claim is based on FMLA retaliation.  *See* Docket 2-2 at ¶ 24.

When analyzing FMLA retaliation claims under 29 U.S.C. § 2615(a)(2), the Court applies the *McDonnell Douglas* burden-shifting scheme discussed above.  *McDonnell Douglas*, 411 U.S. at 802-04; *Metzler*, 464 F.3d at 1171.  To establish a prima facie case of FMLA retaliation, Plaintiff must show: (1) she engaged in a protected activity by taking FMLA-protected leave; (2) the Defendants took a materially adverse action against her; and (3) the circumstances permit an inference of causal connection between the two events.

16

*Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012); *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007); *Metzler*, 464 F.3d at 1171.

Under the FMLA, a "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or residential medical care facility, or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Department of Labor regulations define the "continuing treatment by a health care provider" as:

> A period of incapacity (i.e., inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (A) Treatment two or more times by a health care provider …; or
>
> (B) Treatment by a health care provider on a least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

*Jones v. Denver Public Schools*, 427 F.3d 1315, 1319 (10th Cir. 2005) (quoting 29 C.F.R. § 825.114(a)(2)(i)).

It is undisputed that Plaintiff did not have a serious health condition such that she was incapacitated and was eligible for FMLA leave. Although Plaintiff's Complaint alleges she was receiving treatment for a qualified health condition, she offers no facts supporting such allegation. Instead, it is undisputed that from May 2020 until July 28, 2020, Plaintiff was working from home full-time because of her fear of catching COVID-19 due to her immunocompromised condition, she was not suffering from COVID-19 or any other illness, and she was not undergoing any chemotherapy or any other treatment for

17

her cancer, which was in remission. *See* Docket No. 21 at pp. 3-6, ¶¶ 5, 7 & 27. Ms. Enus'
July 14, 2020 note simply recommended that Plaintiff work from home because she is
considered high risk for complications if she contracts COVID-19. *See* Docket No. 24-2.

In her response, Plaintiff abandons her previous allegation that she was receiving
treatment and now argues only that she was unable to perform her "full functions" as a
Health Service Administrator because she was immunocompromised. *See* Docket No. 24
at p. 3. Not only is this statement unsupported factually, but Plaintiff offers no authority
that such an inability satisfies the definition of a "serious health condition" under the
FMLA. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th
Cir.2006) (a party cannot avoid summary judgment by repeating conclusory opinions,
allegations unsupported by specific facts, or speculation); *L&M Enterprises, Inc. v. BEI
Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir. 2000) ("unsupported conclusory
allegations" are insufficient to defeat a summary judgment motion). Plaintiff's allegation
is also contradicted by her own testimony, in which she stated she probably did more work
from home than at the office, *see* Docket No. 21-1 at p. 94, lns. 16-24, and Ms. Goudeau,
who testified that Plaintiff was not sick when working from home and her productivity did
not drop off. *See* Docket No. 24-1 at p. 27, ln. 20 – p. 28, ln. 2. Thus, there is no factual
support that Plaintiff was unable to perform her full functions even if such allegation was
sufficient to qualify as a serious health condition.

Moreover, it is also undisputed that Plaintiff did not take any FMLA leave such that
she engaged in any protected activity. Under the first element of a retaliation claim,
Plaintiff had to submit a request for FMLA leave to the Defendants in order to avail herself

18

of FMLA protection. *Khalik*, 671 F.3d at 1193; *Ney v. City of Hoisington, Kansas*, 508 F.Supp.2d 877, 887 (D. Kan. 2007) (citing *Neide v. Grand Court Lifestyles, Inc.*, 38 F.Supp.2d 938, 950 n. 12, 951 (D. Kan. 1999). It is undisputed that Plaintiff did not request or take any FMLA leave. After Plaintiff was instructed to contact HR about completing FMLA paperwork, Plaintiff informed Ms. Pryor that she was working full-time and would resign before filling out FMLA paperwork. *See* Docket No. 21 at p. 6, ¶¶ 25-26 & 28. Plaintiff's assertion that she was terminated is immaterial as it is undisputed that she did not seek FMLA leave, had no intention of doing so and was ineligible for such leave had she sought it. Thus, there is no genuine factual issue whether Plaintiff engaged in a protected activity that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250 (1986).

Therefore, based on the foregoing, the undersigned Magistrate Judge concludes that there is no genuine issue of material fact and the Defendants are entitled to judgment as a matter of law on Plaintiff's FMLA retaliation claim.

## V.     Plaintiff's Employer

The Defendants also seek the dismissal of the Board because it cannot be liable as it was not Plaintiff's employer under the FFCRA or the FMLA. Under the FMLA, Plaintiff must affirmatively establish that the Defendants were her employer. *Miles v. Unified School Dist. No. 500, Kansas City*, 347 F.Supp.3d 626, 629 (D. Kan. 2018) (citing 29 U.S.C. § 2615(a)(1), (2)). "Normally the legal entity which employs the employee is the employer under FMLA." 29 C.F.R. § 825.104(c). Under the FMLA, the term "employer":

(i)     means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;

(ii)    includes

    (I)     any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and

    (II)    any successor in interest of an employer;

    (III)   includes any "public agency", as defined in section 203(x) of this title; and

    (IV)    includes the Government Accountability Office and the Library of Congress.

29 U.S.C. § 2611(4)(A).  Similarly, under EPSLA, the term "employer":

    (I)     means any person engaged in commerce or in any industry or activity affecting commerce that –

    . . . ;

    (II)    includes—

    (aa) includes any person acting directly or indirectly in the interest of an employer in relation to an employee (within the meaning of such phrased in section 3(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 203(d)) and

    (bb) any successor in interest of an employer;

    (III))  includes any "public agency", as defined in section 3(x) of the Fair Labor Standards Act of 1938 (29 U.S.C. 203(x)). . . .

Pub. L. No. 116-127 at § 5110(2).  Moreover, when questions arise as to whether an individual or entity is a plaintiff's employer in the context of the FMLA or the FLSA (and EPSLA), courts have applied the economic-reality test to determine whether an employment relationship existed.  *Saavedra v. Lowe's Home Centers, Inc.*, 748 F.Supp.2d 1273, 1292-1293 (D.N.M 2010).  The four factors used to determine whether an employment relationship exists is:

> whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records.

*Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998) (citing *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990)).

It is undisputed that the OCCJA is a separate and distinct legal entity from the Board as a title 60 trust to which the Board is the beneficiary, the OCCJA operates the Moore Center and the OCCJA was Plaintiff's employer. *See* Docket No. 21 at pp. 3 & 7, ¶¶ 2 & 35. It is also undisputed that Mr. Clark, the jail administrator, had ultimate authority over the hiring and firing of Moore Center employees and over the working conditions of the facility's employees, including Plaintiff's rate of pay. *Id*. at pp. 5 & 7, ¶¶ 23 & 39.

Plaintiff concedes she was employed by OCCJA, but argues that the Board is also given authority to make final decisions regarding the termination of employees. *See* Docket No. 24 at p. 2. Plaintiff offers no factual support for this argument or to controvert the Defendants' undisputed facts, but instead cites to *Chrisman v. Board of County Commissioners of Oklahoma County*, 2020 WL 2033965 (W.D. Okla. Nov. 30, 2020) for the proposition that because sheriffs are the final policy makers the county may be liable for the sheriffs' actions. The Court, however, cannot locate either the language from the *Chrisman* case quoted in Plaintiff's response or the legal proposition she asserts, and in any event finds that *Chrisman* is not relevant to the issue at hand. Because there are no issues of fact upon which a rational trier of fact could possibly find for Plaintiff, "there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

Therefore, based on the foregoing, the undersigned Magistrate Judge concludes that, even if the Defendants were not entitled to judgment on Plaintiff's FFCRA and FMLA claims, Plaintiff cannot assert any of her claims against the Board because it was not her employer for purposes of her FFCRA and FMLA claims.

## VI.    Okmulgee County Jail Trust Authority

In her Complaint, Plaintiff also names the Okmulgee County Jail Trust Authority as a defendant. *See* Docket No. 2-2. Based on a review of the docket, however, it is apparent that such entity, to the extent it exists, was never served with a summons and a copy of the Complaint within 90 days as required by Fed. R. Civ. P. 4(m) and no leave was ever sought to extend the time limit. Therefore, the undersigned Magistrate Judges concludes that the Okmulgee County Jail Trust Authority should be dismissed without prejudice for failure to obtain timely service.

## CONCLUSION

Accordingly, the undersigned Magistrate Judge hereby RECOMMENDS that: Defendants' Motion for Summary Judgment and Brief in Support [Docket No. 21] should be GRANTED; the Okmulgee County Jail Trust Authority should be DISMISSED without prejudice for failure of timely services of process; and the Defendants' Motion in Limine [Docket No. 25] should be DENIED as moot. Any objections to this Report and Recommendation must be filed within fourteen days. *See* 18 U.S.C. § 636(b)(1); Fed. R.

22

Civ. P. 72(b).  Any objections and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

DATED this 16th day of March, 2023.

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**